IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| HEATHER MARIE PHELAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:25-cv-06031-RK |
| ) | |
| COMMISSIONER, SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is Plaintiff Heather Marie Phelan's appeal brought under 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **REVERSED and REMANDED**.

## Background

Plaintiff filed protective applications under Title II of the Social Security Act for disability and disability insurance benefits and Title XVI of the Social Security Act for supplemental security income on August 1, 2022, alleging disability beginning September 15, 2021. (*See* Tr. at 14.) After Plaintiff's applications were denied at both the initial and reconsideration levels, Plaintiff requested a hearing before an ALJ. Following a hearing, (*id.* at 34-58), the ALJ issued an unfavorable decision denying Plaintiff's applications for social security benefits, (*id.* at 14-33). The Appeals Council denied Plaintiff's subsequent request for review, (*id.* at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff accordingly seeks judicial review of the ALJ's unfavorable decision denying her applications for disability and disability insurance benefits and supplemental security income under the Social Security Act.

## Discussion

The Court's review of the ALJ's decision denying Plaintiff's applications for benefits under the Social Security Act is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.

2008)). Put another way, "we will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is legal error." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

## I. The Five Step Sequential Analysis for Social Security Act Benefits

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step sequential analysis found at 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has any severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, the claimant is entitled to benefits under the Social Security Act. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still

---

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by an claimant's impairment(s) and related

2

do any past relevant work considering the claimant's RFC as assessed by the ALJ. If the ALJ finds that the claimant can do so, the claimant is not entitled to benefits under the Social Security Act. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's RFC alongside their age, education, and work experience, and the corresponding testimony of a vocational expert. If the ALJ finds that the claimant can do so, the claimant is not entitled to benefits under the Social Security Act.

II.   **The ALJ's Findings**

The ALJ found at the initial steps of the sequential analysis under the Social Security Act that Plaintiff has severe impairments of sciatica (nerve irritation) versus trochanteric bursitis (hip inflammation), PTSD, and bipolar disorder, but that none of Plaintiff's severe impairments (or her non-severe impairments of substance addiction disorder, vision issues, GERD, and hand burn) meet or medically equal a Listed Impairment. (Tr. at 17-20.) Accordingly, the ALJ next considered Plaintiff's RFC at Step Four.

As relevant here, the ALJ considered Plaintiff's subjective symptoms and limitations. The ALJ noted that Plaintiff reported in the function report that she could walk one mile before needing to stop and rest, that she could drive, and that she "shops in stores for groceries once a month." (*Id.* at 21 (citing Exhibit 4E [Tr. at 230]).) The ALJ further noted that Plaintiff reported in the function report that she could prepare "simple meals" and that once a week for 30-minute periods of time she is able to clean the house, do laundry, and clean dishes. (*Id.*) The ALJ noted Plaintiff's testimony at the hearing that she is able to go to the store and can walk for about half an hour; the ALJ also noted Plaintiff's testimony that "movement helps with the pain." (*Id.*) Finally, the ALJ noted Plaintiff's testimony that she had most recently received one set of epidural injections in the lumbar spine which helped for a couple of months but that she did not know how often she could receive injections. (*Id.*)

---

symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

3

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that "the statements from non-medical sources, including those of claimant, concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 21-22.) The ALJ explained that Plaintiff's medical records reflect good or normal clinical findings (such as normal range of motion and negative straight leg raise test with full strength throughout), although testing (including an x-ray and EMG) did indicate mild left hip osteoarthritis (but no acute bony abnormalities) and increased motor unit amplitude or increased spontaneous activity at the left fibularis long muscle, left gastric muscle, and left gluteus muscle. (*Id.* at 22.) The ALJ noted that Plaintiff received prescriptions for gabapentin, participated in monthly pain management, and most recently received a lumbar transforaminal epidural injection at left L3-4 and left L4-5 after she reported "no relief from a Medrol Dosepak." (*Id.*)

In evaluating the persuasiveness of the prior administrative findings under 20 C.F.R. §§ 404.1520c and 416.920c, the ALJ found "generally unpersuasive" the findings by the state agency medical consultants, noting that none of the consultants assessed Plaintiff's physical RFC, and that "[t]he de minimis standard for severe physical . . . impairment is satisfied by the more substantive objective evidence received at the hearing level . . . ." (Tr. at 24, 25.) No further physical consultative examination or review by interrogatory was obtained by the ALJ.

The ALJ found that Plaintiff "is capable of independently, appropriately and effectively completing tasks on a sustained basis . . . in a manner consistent with the requirements of full-time employment," (*id.*), and assessed Plaintiff's physical RFC as follows:

> [Plaintiff] has the [RFC] to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] can sit for 6 hours out of 8 hours; and she is able to stand and walk for 6 hours out of 8 hours. [Plaintiff] can lift, carry, push, or pull 10 pounds frequently and up to and including 20 pounds occasionally. She should never climb ladders, ropes, or scaffolding. [Plaintiff] can occasionally climb stairs or ramps; stoop; kneel; crouch; and crawl. She can have less than occasional exposure to vibration and to extreme cold.

(*Id.* at 20.)

Given this RFC, after finding that Plaintiff could not perform past relevant work as a server and banquet head, the ALJ found at Step Five that Plaintiff could perform jobs that exist in significant numbers in the national economy, including housekeeping cleaner, laundry sorter, and silver wrapper. (*Id.* at 27-28.)

### III. Whether Substantial Evidence Supports the ALJ's Physical RFC

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's testimony regarding her physical limitations for standing and walking under Social Security Ruling 16-3p. Specifically, Plaintiff argues that the ALJ failed to consider or to properly discount Plaintiff's testimony that she is limited in her ability to stand in one place for any significant period of time (approximately 10 minutes) due to numbness in her legs and severe back pain, that after standing for 10 minutes she must sit or lie down for 30 minutes, and that she can only walk for approximately 30 minutes at a time.

Social Security Ruling 16-3p governs how ALJ's "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." 2016 WL 1119029, at *1 (Mar. 16, 2016). The administrative ruling requires that in evaluating the evidence—including testimony presented at the hearing before an ALJ—the ALJ must provide "clearly articulated" and "specific reasons for the weight given to the individual's symptoms." *Id.* at *9, 10; *see* 20 C.F.R. §§ 404.1529(c)(4), 416.920c(c)(4) (the ALJ will consider the claimant's "statements about the intensity, persistence, and limiting effects of [his or her] symptoms, and [the ALJ] will evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence").

"In evaluating subjective complaints, an ALJ may consider the claimant's treatment and daily activities," as well as other evidence in the administrative record. *Steffans v. O'Malley*, No. 4:23-CV-00158-DGK-SSA, 2024 WL 21800, at *4 (W.D. Mo. Jan. 2, 2024); *see Pierce v. Kijakazi*, 22 F.4th 769, 772 (8th Cir. 2022) (recognizing that "an ALJ need not accept as true a claimant's testimony about the extent of [her] limitations); *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (noting that "[s]ubjective complaints may be discounted if the claimant's testimony is inconsistent with the evidence as a whole"). "Credibility[2] is primarily a matter for the ALJ to decide." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (quotation modified). The Court "defers to the ALJ's [credibility] determinations as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Nash*, 907 F.3d at 1090 (internal quotation marks omitted).

---

[2] The Eighth Circuit has explained that in this context "credibility" does not refer to a claimant's character but instead refers to "the level of consistency between [a claimant's] subjective assertions and the balance of the record as a whole." *Noerper v. Saul*, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

Plaintiff argues that the ALJ here did not explain "why Phelan's specific allegations of limited standing and walking due to chronic back pain were not consistent with the record as a whole." (Doc. 8 at 14.) The Commissioner argues in response that the ALJ's RFC assessment is supported by substantial evidence and suggests that the ALJ properly weighed Plaintiff's subjective complaints against the objective medical evidence, course of treatment, and Plaintiff's reported daily activities. (Doc. 15 at 6.)

As set out above, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of her impairments "are not entirely consistent" with the medical and non-medical evidence. (Tr. at 21-22.) For the reasons explained below, however, the Court finds it is unable to determine whether substantial evidence supports any good reasons for the ALJ to discount Plaintiff's testimony and allegations, at a minimum, for her limited ability to stand for any significant period of time.

The Commissioner cites *Davis v Apfel*, 239 F.3d 962 (8th Cir. 2001), in support of the ALJ's decision here. In *Davis*, the Eighth Circuit considered an argument on appeal that the ALJ erred at Step Five of the sequential analysis because the hypothetical posed to the vocational expert did not specify Davis' need to alternate sitting and standing because of her leg and back pain after the ALJ improperly discounted Davis' complaints of leg and back pain. On appeal, the Eighth Circuit found that the ALJ had properly evaluated Davis' subjective complaints:

> After reviewing the record evidence, the ALJ concluded that [Davis'] condition was not as bad as she had alleged. Sufficient evidence exists to support this conclusion. First, there was a discrepancy between Davis' medical treatment history and her subjective complaints. The record indicated that Davis had not made significant efforts to seek medical treatment to alleviate her alleged pain, and she was not taking any prescription medication intended to treat such pain. The ALJ properly took this evidence into account in discrediting her complaints. The record also indicated that Davis participated in many normal daily activities inconsistent with her alleged symptoms. Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.

*Id.* at 967 (internal citations omitted). Rather than supporting the Commissioner's argument on appeal, *Davis* illustrates the deficiency in the ALJ's decision requiring remand.

Although the ALJ referenced other aspects of Plaintiff's testimony, the ALJ did not mention Plaintiff's testimony regarding the limitations in her ability to stand and walk due to her chronic back pain or sciatica and leg/hip pain. Nevertheless, in the decision the ALJ did reference the objective medical record, as the Commissioner points out, related to pain management for sciatica

and hip or leg pain throughout 2023.  Unlike in *Davis*, however, the administrative medical record here shows that Plaintiff actively undertook efforts to alleviate her alleged pain.  The medical record reflects a progression of medical interventions beginning in early 2023 to address Plaintiff's chronic back pain and sciatica starting with prescriptions for gabapentin and Topamaz and progressing with the addition of cortisone shots and a prescribed Medrol Dosepak, and ultimately to a lumbar transforaminal epidural at left L3-4 and left L4-5 after the Medrol Dosepak did not provide relief.  Although (as the ALJ noted) clinical examinations record somewhat normal findings (such as full range of motion, albeit sometimes with tenderness or discomfort), the course of medical treatment follows progressive clinical testing with clinically significant findings.  X-ray, EMG, and MRI testing showed mild left hip osteoarthritis and increased motor unit amplitude or increased spontaneous activity at the left fibularis long muscle, left gastric muscle, and left gluteus muscles, as well as bulging disc at L3-4 and L4-5 causing left neural foraminal narrowing with mild to moderate central canal stenosis appreciated at the 4-5 level.  And in addition to the other diagnoses recognized by the ALJ and mentioned above, Plaintiff was also diagnosed with left lumbar radiculopathy and lumbar degenerative disc disease, following the MRI.  (Tr. at 455.)

  Second, as to Plaintiff's daily activities, the ALJ primarily relied on Plaintiff's function report which indicated that Plaintiff could walk one mile before needing to stop and rest, that she shops for groceries in stores once a month, and that she "does housecleaning, laundry and dishes, once a week with 30 minutes spent on each task . . . ."  (Tr. at 21.)  The function report, however, primarily concerns Plaintiff's mental (not physical) limitations and, more importantly, pre-dates the established medical care for Plaintiff's back and leg/hip pain and issues that the ALJ otherwise considered.  *See Stauffer v. Kijakazi*, No. 20-04121-CV-C-WBG, 2022 WL 636719, at *2 (W.D. Mo. Mar. 4, 2022) ("Where there are inconsistencies in an individual's statements made at varying times, those statements are not necessarily inaccurate.") (internal quotation marks omitted; quotation modified).  More importantly, however, it is not clear that the function report and Plaintiff's testimony as to her limited ability to stand and walk are necessarily inconsistent.

  For instance, it is not clear that Plaintiff's reported ability in the function report that she can walk for approximately one mile at a time is necessarily inconsistent with her hearing testimony that she can only stand in one place for a very short amount of time or that she can walk for approximately 30 minutes at a time.  In fact—as the ALJ explicitly recognized—Plaintiff testified that moving or walking helped relieve her pain she experienced from standing in one

place. Finally, none of the activities mentioned by the ALJ—shopping for groceries once a month, driving, preparing simple meals, and doing housecleaning, laundry, and dishes once a month for 30 minutes at a time—appear to be necessarily inconsistent with Plaintiff's testimony in this regard, either.

At a minimum, the Court is unable to say on this record whether the ALJ's apparent discounting of Plaintiff's testimony at least as to her significant limitation in her ability to stand for any significant period of time (if not her limitation as to her ability to walk as well) is supported by substantial evidence.[3] This is not harmless error. The vocational expert testified at the hearing in response to questioning by plaintiff counsel that if a hypothetical individual with limitations as assessed by the RFC above could only stand for 10 minutes at a time and would then need to sit for 30 minutes before standing for another 10 minutes or was limited to 3 hours of standing and/or walking in an 8-hour workday, that such individual would not be able to perform the jobs otherwise identified by the vocational expert in this case. (Tr. at 56-57.) Moreover, as Plaintiff asserts and the Commissioner does not otherwise dispute, if Plaintiff's testimony regarding her limited abilities to stand and walk was credited and was consistent with a level of "sedentary work" (as opposed to a reduced "light work" level as initially found by the ALJ), the Medical-Vocational Guidelines ("Grid Rules") may be implicated considering Plaintiff's vocational characteristics and may direct a finding that Plaintiff is disabled. (*See* Doc. 8 at 19-20.)

---

[3] Although not specifically articulated by either party, the Commissioner's argument that the ALJ's RFC assessment here—including limiting Plaintiff to standing and walking for 6 hours out of an 8-hour workday—is supported by substantial evidence only further reveals the flaw in the ALJ's RFC reasoning or analysis. Simply put, "there must be some support in the record" for the limitation imposed by the ALJ in the RFC assessment. *Marriott v. Kijakazi*, No. 2:22-CV-03197-NKL, 2023 WL 3175431, at *3 (W.D. Mo. May 1, 2023). Neither the ALJ in the decision nor the Commissioner here, however, "identify any support" in the record for the standing and walking limitation as set out in the RFC assessment by the ALJ (i.e., that Plaintiff can stand and walk for 6 hours in an 8-hour workday). *See id.* at *3. Although Plaintiff primarily argues that the ALJ erred to the extent she improperly discounted Plaintiff's testimony, as another matter, the Commissioner does not persuasively point to any support in the record for the limitation actually set out by the ALJ, even though the Commissioner argues that the finding is supported by substantial evidence. *See id.* (noting that "*discounting* Mr. Marriott's testimony is not the same as *supporting* the RFC that the ALJ ultimately crafted"); *see Noerper v. Saul*, 964 F.3d 738, 746-47 (8th Cir. 2020) (holding that reversal and remand was required where "[t]here is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday").

8

## Conclusion

Accordingly, after careful consideration and review, the Court **ORDERS** that the ALJ's decision is **REVERSED and REMANDED**.[4]

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 12, 2026

---

[4] Because the Court finds that reversal and remand is required for the reasons explained above, the Court does not consider Plaintiff's other argument on appeal concerning the ALJ's mental RFC assessment. The ALJ will have the opportunity on remand to consider the expert opinions she finds persuasive and to incorporate such limitations in the mental RFC as are consistent with those opinions she finds persuasive (or explain why there is any inconsistency). *See* Social Security Ruling 96-8p.